**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM OMAR MEDINA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 23-886** |
| | : | |
| **GEORGE M. LITTLE, MONIQUE** | : | |
| **SAVAGE, JAKIE WOOD, SGT D.** | : | |
| **HOPSON, C.O. WATSON, LT.** | : | |
| **MARTIN, SGT. HOLLAND, and** | : | |
| **WELLPATH LLC** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                            **November 20, 2023**

Incarcerated William Omar Medina claims medical professionals and state actors managing the correctional facility were deliberatively indifferent to his chronic tonsilitis and breathing issues, retaliated against him when he complained, and then did not afford him due process in a misconduct hearing.  He is representing himself.  We granted earlier Motions to dismiss. Mr. Medina filed an amended Complaint adding a healthcare provider.  The medical professional, healthcare provider, and state actors now move to dismiss the amended Complaint. We agree with them and grant the motions to dismiss as to most of Mr. Medina's claims.  But he may now proceed into discovery on his Eighth Amendment deliberate indifference claim and state law medical negligence claim (if he can timely adduce a certificate of merit) against Nurse Savage. He may also proceed into discovery on his First Amendment retaliation claim and Fourteenth Amendment medical privacy claim against Officer Watson.  We dismiss his due process claim against an unnamed defendant without prejudice.  We dismiss his deliberate indifference claims against the healthcare provider without prejudice.  We dismiss the remaining claims with prejudice after Mr. Medina could not plead these claims based on facts.

I.      **Alleged *pro se* facts.**

The Commonwealth incarcerates William Omar Medina at State Correctional Institution Pine Grove as his home facility.[1]   The Commonwealth temporarily housed Mr. Medina at Correctional Institution Phoenix where it provided him medical care under a contract with Wellpath LLC.[2]

*Facility medical personnel treated Mr. Medina for his breathing issues.*

SCI Phoenix Nurse Monique Savage examined Mr. Medina on September 10, 2022.[3] An unidentified Facility Doctor diagnosed Mr. Medina with chronic tonsillitis and chronic breathing problems after Mr. Medina caught COVID-19 twice.[4] The Facility Doctor prescribed medicine to reduce the swelling in Mr. Medina's throat.[5] The Facility Doctor referred Mr. Medina to an Ear, Nose, and Throat doctor at Temple Hospital.[6] The Facility placed Mr. Medina on a "medical hold."[7] The Temple Hospital doctor ordered a sleep test for Mr. Medina.[8] The sleep test recorded forty instances of Mr. Medina not breathing while asleep.[9] The Facility Doctor ordered Mr. Medina a continuous positive airway pressure (CPAP) machine.[10] Wellpath did not timely send the sleep test results to the Temple doctor or timely provide Mr. Medina with a CPAP machine.[11] Wellpath employee Jakie Woods did not issue Mr. Medina's CPAP machine.[12]

*Mr. Medina filed a medical negligence grievance.*

Mr. Medina filed a medical negligence grievance on October 14, 2022.[13]   Mr. Medina alleged Facility medical officials failed to provide proper treatment for his tonsillitis or provide him a CPAP machine.[14] Mr. Medina submitted the grievance to the office of Secretary of Corrections George Little.[15] State actors could access Mr. Medina's grievances on "computer data" and on "D.O.C. data records."[16]

### *Mr. Medina's breathing issues in mid-October 2022.*

Mr. Medina's breathing issues worsened due to chronic tonsillitis and no CPAP machine.[17] Mr. Medina and his cellmate called for emergency medical assistance on two consecutive nights between October 12 and October 15, 2022.[18] An unidentified responding Corrections Officer told Mr. Medina Nurse Savage said medical would not come to check his breathing issues.[19]  Mr. Medina suddenly awoke on October 16, 2022 after being out of breath for several days.[20] Mr. Medina fainted and hit his head on the wall and floor in his cell.[21] Facility Officer Watson, present during the incident, did not perform CPR on him.[22] Medical personnel transported Mr. Medina to the trauma unit.[23]  Mr. Medina grieved Officer Watson for failing to perform CPR on him after she discovered him unconscious in his cell.[24]

### *State actors retaliate in October 2022.*

Sergeant Hopson retaliated for Mr. Medina's grievance by sending Mr. Medina's property to a different facility.[25] Secretary Little ordered Sergeant Hopson to pack and send Mr. Medina's property from SCI Phoenix to SCI Pine Grove on October 17, 2022.[26]  Officer Watson retaliated for Mr. Medina's grievance by announcing Mr. Medina had a sexually transmitted disease in front of a group of incarcerated people on October 19, 2022.[27]  Mr. Medina reported Officer Watson for violations of the Prison Rape Elimination Act alleging she revealed Mr. Medina's private medical information.[28] Officer Watson retaliated by giving Mr. Medina a major misconduct violation for praying alone during recreation on October 19, as captured on the Facility's cameras.[29]  Officer Watson falsified documents and falsely alleged Mr. Medina threatened to harm Officer Watson and her family.[30]

Sergeant Hopson sent Mr. Medina's property to SCI Pine Grove on October 27, 2022 in retaliation for Mr. Medina filing the medical negligence grievance and complaint against Officer Watson.[31] Mr. Medina's grievance and complaint were submitted to Sergeant Hopson.[32]

### The Department held a major misconduct hearing.

The Department held a hearing on October 21, 2022 to address Officer Watson's allegations.[33] The Facility did not allow Mr. Medina to submit witness testimony.[34] The Department did not find Officer Watson's allegations to be true based on other instances where Officer Watson lied in her misconduct write-ups.[35] The Facility placed Mr. Medina on cell restriction for an unplead period after finding Mr. Medina guilty on other charges contained in Officer Watson's write-up.[36]

### HVAC issues at the Facility worsen Mr. Medina's problems.

HVAC issues at the SCI Phoenix Facility delayed Mr. Medina from communicating with his attorney in October 2022.[37] These HVAC issues also delayed a Post-Conviction Relief Act hearing.[38] Sheriffs had to contact Lehigh County Clerk of Courts to explain the severe HVAC issues required construction on the Facility "shutting down movement."[39] Mr. Medina lacked air flow in his cell, which exacerbated his breathing issues.[40]

### Retaliation in May 2023.

Mr. Medina attended an evidentiary hearing in the Lehigh County Courthouse in May 2023.[41] Sergeant Martin and Lieutenant Holland confiscated Mr. Medina's CPAP the day after the hearing in retaliation for Mr. Medina's grievances.[42] Mr. Medina received a replacement CPAP machine two weeks later.[43]

## II.    Analysis

Mr. Medina sued various Facility officials, medical professionals, and their employers alleging retaliation, deliberate indifference, inadequate conditions of confinement, Health Insurance Portability and Accountability Act violations, and vicarious liability.[44] We screened Mr. Medina's allegations and dismissed his claims with leave to amend to plead facts consistent with his claims.[45]

Mr. Medina amended his Complaint.[46] He seemingly alleges four general claims: Eighth Amendment deliberate indifference to his medical needs with a potential state law medical negligence claim; Eighth Amendment conditions of confinement due to HVAC deficiencies at the Facility; First Amendment retaliation responsive to his grievance about the deliberate indifference; and violating federal law by announcing his medical condition to other incarcerated persons. He alleges: Wellpath's Ms. Woods and Wellpath failed to timely provide him a CPAP machine;[47] Wellpath did not timely send his sleep test results to Temple Hospital;[48]  Nurse Savage and Wellpath did not respond to his nighttime emergency calls;[49] Officer Watson did not perform CPR when she discovered him unconscious in his cell;[50] and, Nurse Savage and Ms. Woods did not provide CPR.[51]   We read Mr. Medina's claim against Secretary Little, Nurse Savage, and Ms. Woods for "medical negligence" as a state law medical negligence claim.[52] Mr. Medina also asserts a conditions of confinement claim under the Eighth Amendment based on the stale air in his cell exacerbating his breathing issues.[53]

Mr. Medina also attempts to plead First Amendment retaliation claims against Sergeant Hopson and Secretary Little for sending Mr. Medina's property to SCI Pine Grove after he filed a medical grievance and Prison Rape Elimination Act complaint against Officer Watson.[54] Mr. Medina alleges Officer Watson retaliated against him by announcing Mr. Medina's private medical

information to a group and giving him a major misconduct violation for praying during recreation.[55] Mr. Medina claims Sergeant Holland and Lieutenant Martin retaliated against him by confiscating his CPAP machine.[56] In the alternative, Mr. Medina alleges Sergeant Holland and Lieutenant Martin confiscated his CPAP machine as retaliation for adding Sergeant Holland and Lieutenant Martin to this lawsuit.[57] Mr. Medina claims Secretary Little is liable for Nurse Savage, Officer Watson, and Sergeant Hopson's alleged retaliation against Mr. Medina because Secretary Little had personal knowledge of the alleged retaliation and acquiesced to the retaliation.[58]

Mr. Medina claims Officer Watson violated the Health Insurance Portability and Accountability Act by announcing to a group of incarcerated people Mr. Medina has a sexually transmitted disease.[59]   Mr. Medina broadly claims the Department of Corrections at SCI Phoenix denied him due process by not allowing him to submit witness testimony in his major misconduct hearing arising from the October 19 incident.[60]

Ms. Woods, the Commonwealth Defendants, and Wellpath move to dismiss the claims in the Amended Complaint.[61]

We dismiss Mr. Medina's Eighth Amendment deliberate indifference claim and state law medical negligence claim against Ms. Woods. We dismiss Mr. Medina's Eighth Amendment deliberate indifference claim against Officer Watson.  We dismiss Mr. Medina's Health Insurance Portability and Accountability Act claim against Officer Watson. We dismiss Mr. Medina's retaliation claims against Sergeant Hopson, Sergeant Holland, and Lieutenant Martin.  We dismiss all claims against Secretary Little.  We dismiss Mr. Medina's Eighth Amendment conditions of confinement claim.   We dismiss Mr. Medina's due process claim.   We dismiss Mr. Medina's claims against Wellpath.

We will proceed to discovery on the Eighth Amendment deliberate indifference claim and state law medical negligence claim against Nurse Savage; the First Amendment retaliation claim against Officer Watson; and the Fourteenth Amendment medical privacy claim against Officer Watson.

### A.    We grant Ms. Woods's motion to dismiss.

Mr. Medina pleads an unidentified doctor prescribed him a CPAP machine and Ms. Woods did not issue the CPAP machine.[62] We previously granted Mr. Medina leave to amend and plead how Ms. Woods's conduct violated the Eighth Amendment.[63] Mr. Medina now pleads Ms. Woods, along with Nurse Savage and Officer Watson, acted with deliberate indifference "with the very purpose of causing harm by not providing CPR."[64]  Ms. Woods moves to dismiss.[65] Ms. Woods argues Mr. Medina fails to state a plausible claim because he fails to plead she deprived Mr. Medina of a constitutional right and he fails to plead facts showing she had a culpable state of mind.[66] We liberally construe Mr. Medina as asserting a state law claim of medical negligence in addition to an Eighth Amendment deliberate indifference claim. We find Mr. Medina does not plausibly allege medical negligence or deliberate indifference claims against Ms. Woods. We dismiss his Eighth Amendment deliberate indifference claim against Ms. Woods with prejudice as he has now twice failed to plead how Ms. Woods's conduct violated a constitutional right.

### 1. We dismiss Mr. Medina's Eighth Amendment deliberate indifference claim against Ms. Woods.

We liberally read Mr. Medina as alleging various state actors acting under the color of state law deprived him of his constitutional rights and we proceed under section1983.[67] "To state a claim under [section] 1983, [Mr. Medina] 'must establish that [he] was deprived of a federal constitutional or statutory right by a state actor.'"[68]  The Eighth Amendment prohibits punishment

which "violates civilized standards of humanity and decency."[69] "[State actors] violate an [incarcerated person's] Eighth Amendment rights when they are deliberately indifferent to an [incarcerated person's] serious medical need."[70] To establish an Eighth Amendment claim for deliberate indifference, Mr. Medina must plead "(i) a serious medical need, and (ii) acts or omissions by [state actors] that indicate deliberate indifference to that need."[71]

Our Court of Appeals instructs deliberate indifference exists "where the [state actor] (1) knows of [an incarcerated person's] need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents [an incarcerated person] from receiving needed or recommended medical treatment."[72] "A [state actor] is not deliberately indifferent 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[73] Claims of mere negligence "without some more culpable state of mind, do not constitute 'deliberate indifference.'"[74]

Ms. Woods does not dispute Mr. Medina alleges an objectively serious medical need.[75] Ms. Woods disputes whether Mr. Medina alleged a requisite state of mind.[76] Mr. Medina's allegation the CPAP machine "was [supposed] to be issued by Jakie Woods" is insufficient to allow us to infer Ms. Woods knew Mr. Medina needed the CPAP but refused to provide it.[77] Mr. Medina pleads no facts alleging Ms. Woods knew anything about Mr. Medina's chronic tonsillitis, difficult breathing, or his prescription for a CPAP machine. Mr. Medina's amended allegation Ms. Woods, along with other medical personnel and facility officials, failed to perform CPR on Mr. Medina is also insufficient to allow us to infer Ms. Woods knew Mr. Medina needed CPR but refused to provide it.[78] Mr. Medina does not plead Ms. Woods's presence when he fainted in his

cell or awareness he needed CPR.  Ms. Woods could not have acted with deliberate indifference if she was not aware of Mr. Medina's medical needs.

We grant Ms. Woods's motion to dismiss Mr. Medina's Eighth Amendment deliberate indifference claim against Ms. Woods as he does not allege facts allowing us to plausibly infer Ms. Woods acted with a culpable state of mind.

### 2.  We dismiss Mr. Medina's state law claims against Ms. Woods.

We liberally read Mr. Medina's allegations as also attempting to bring a state law medical negligence claim against Ms. Woods.[79] We dismiss Mr. Medina's medical negligence claim because Mr. Medina does not plausibly allege Ms. Woods owed him a duty.

In Pennsylvania, medical negligence, or medical malpractice, is defined as "the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services."[80] "To establish a cause of action for negligence under Pennsylvania law, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages."[81]

Mr. Medina does not plausibly allege a medical negligence or medical malpractice claim against Ms. Woods.  Mr. Medina's allegation the CPAP machine "was [supposed] to be issued by Jakie Woods" is insufficient to allow us to infer Ms. Woods owed Mr. Medina duty as a patient. He does not allege interactions with Ms. Woods.   He does not allege Ms. Woods knew anything about Mr. Medina's chronic tonsillitis, difficult breathing, or his prescription for a CPAP machine. Mr. Medina's vague allegations are insufficient to allow us to plausibly infer Ms. Woods owed him a duty of care. [82]  We dismiss Mr. Medina state law claims against Ms. Woods.

**B.    We grant in part and deny in part the Commonwealth Defendants' motion to dismiss.**

Mr. Medina brings claims against Commonwealth Defendants Secretary Little, Nurse Savage, Sergeant Hopson, Officer Watson, Lieutenant Martin, and Sergeant Holland. Commonwealth Defendants move to dismiss all claims.[83]  We address each in turn.

**1.    Mr. Medina adequately pleads a deliberate indifference claim against Nurse Savage.**

Mr. Medina alleges Nurse Savage was deliberately indifferent to his medical needs when she failed to respond to his emergency calls and refused to provide CPR.[84]  Commonwealth Defendants move to dismiss arguing Mr. Medina fails to state a claim against Nurse Savage because he does not plead whether she provided medical care and Mr. Medina's vague allegation she failed to respond is insufficient to show deliberate indifference.[85] We find Mr. Medina pleads a deliberate indifference claim against Nurse Savage.

State actors are deliberately indifferent when  "knowledge of the need for medical care is accompanied by the intentional refusal to provide it."[86] "Where [an incarcerated person] has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."[87] "Nonetheless, there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements."[88] For example, facility authorities may not "deny reasonable requests for medical treatment . . . [when] such denial exposes the [incarcerated person] 'to undue suffering or the threat of tangible residual injury.'"[89]

Mr. Medina admits he received some treatment for his medical issues.[90]  We are generally hesitant to second guess such treatment.  But we find the alleged facts allow us to plausibly infer a circumstance in which Nurse Savage's conduct constitutes a denial of a reasonable request for

medical treatment which exposed Mr. Medina to undue suffering.  We liberally read Mr. Medina as alleging Ms. Savage knew of his chronic tonsilitis and breathing issues because she performed his initial examination.[91]  Mr. Medina alleges his cellmate requested medical treatment when he called for emergency assistance two nights in a row due to Mr. Medina's breathing issues.[92] Mr. Medina plausibly alleges Nurse Savage denied this reasonable request when she notified a corrections officer "medical will not come and check [Mr. Medina's] breathing issues."[93]  Mr. Medina alleges this denial exposed him to undue suffering because shortly after his calls were ignored, Mr. Medina awoke out of breath, fainted, and had to be taken "by SCI Phoenix Medical to the trauma unit."[94]

Mr. Medina plausibly alleges at this early stage Nurse Savage knew of his serious medical needs and intentionally refused to respond to Mr. Medina's emergency calls for help.[95]

### 2. Mr. Medina adequately pleads the elements of a state law medical negligence claim against Nurse Savage subject to producing a certificate of merit.

We can also read Mr. Medina as attempting to bring a state law medical negligence claim against Nurse Savage.  Mr. Medina adequately pleads a state law medical negligence claim against Officer Watson subject to Commonwealth Defendants seeking dismissal based on the absence of a certificate of merit and we allow Mr. Medina approximately seventy days (until January 30, 2024) to offer a certificate of merit in support should he wish to pursue a medical negligence claim under Pennsylvania Law.

Mr. Medina plausibly alleges Nurse Savage owed him a duty as medical personnel who was responsible for providing him with medical care. Mr. Medina plausibly alleges Nurse Savage breached her duty by failing to respond to his emergency calls for medical help.  His allegation Nurse Savage told an unidentified corrections officer "medical will not come" suggests she had a responsibility to respond to Mr. Medina's call and refused to do so. Mr. Medina alleges this denial

exposed him to injury because Mr. Medina later awoke out of breath, fainted, and had to be taken "by SCI Phoenix Medical to the trauma unit."[96]

Pennsylvania Rule of Civil Procedure 1042.3 requires Mr. Medina must "file a certificate of merit within sixty days after filing a professional negligence complaint."[97] "The certificate must include one of the following: a written attestation by 'an appropriate licensed professional' that there is a "reasonable probability that the care, skill or knowledge exercised or exhibited" by the defendant 'fell outside acceptable professional standards,' and that this was the cause of the plaintiff's injuries; a statement that the claim against the defendant is based only on the professional negligence of those for whom the defendant is responsible; or a statement that expert testimony is unnecessary for the plaintiff's claim to proceed."[98] The rule applies to incarcerated persons "and constitutes a rule of substantive state law with which plaintiffs in federal court must comply."[99] Failure to file a certificate of merit is fatal to a medical negligence claim.[100] But "[u]nder Pennsylvania Rule of Civil Procedure 1042.7, defendants may not seek dismissal of a claim based on the lack of a certificate of merit unless the defendants have provided thirty days' notice prior to seeking dismissal."[101]

Commonwealth Defendants do not address this argument in their Motion or allege proof they served Mr. Medina notice of the deficiency. Absent evidence the Commonwealth Defendants fulfilled their notice responsibilities, we find Mr. Medina adequately pleads a medical negligence claim against Nurse Savage subject to later dismissing his state law medical negligence claim.

### 3.  Mr. Medina does not plead an Eighth Amendment deliberate indifference claim against Officer Watson.

Mr. Medina alleges Officer Watson violated his Eighth Amendment rights by failing to perform CPR when he fainted in his cell on October 16, 2022.[102]  Commonwealth Defendants argue Officer Watson is not a medical provider and is not required to respond to the medical needs

of an incarcerated person already receiving treatment from a doctor.[103] Mr. Medina does not plead an Eighth Amendment deliberate indifference claim against Officer Watson.

"As a general rule, non-medical prison officials are not deliberately indifferent under the Eighth Amendment simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor or because they deferred to the judgment of the medical staff treating the inmate."[104] "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference."[105] When medical treatment is provided we "presume that the treatment of a prisoner is proper absent [an allegation] that it violates professional standards of care."[106]

Mr. Medina's receipt of medical treatment affects the deliberate indifference claims he asserts against non-medical facility officials. Mr. Medina admits Facility medical personnel took him to the trauma unit after he fainted.[107] Mr. Medina does not allege Facility medical personnel violated a professional standard of care or Officer Watson had a reason to believe the medical personnel would mistreat or not treat Mr. Medina after he fainted.  Officer Watson reasonably deferred to the judgment of medical personnel.

We are aware courts may find a correctional facility officer "failing to provide CPR or other life-saving measures to an incarcerated person in obvious need can provide the basis for liability under [section] 1983 for deliberate indifference."[108]  In *Lemire v. California Department of Corrections*, the Court of Appeals for the Ninth Circuit reversed summary judgment of a deliberate indifference claim brought by the family and estate of an incarcerated person who hung himself in his cell.[109] The court of appeals held the district court should not have granted summary judgment where the responding officers failed to provide CPR while waiting for medical to arrive

even though trained in CPR.[110] The court held, "While the failure to provide CPR to a prisoner in need does not create an automatic basis for liability in all circumstances, a trier of fact could conclude that, looking at the full context of the situation, officers trained to administer CPR who nonetheless did not do so despite an obvious need demonstrated the deliberate indifference required for an Eighth Amendment claim."[111] The court of appeals found a triable issue of fact as to whether the responding officers were deliberately indifferent to the incarcerated person's potentially serious medical need when they first arrived at his cell.[112]

Mr. Medina makes different allegations.  Mr. Medina does not allege details regarding Officer Watson's response to him fainting, such as how long Officer Watson waited for medical help to arrive and whether Officer Watson encountered an obvious need for CPR based on the circumstances. Mr. Medina does not allege Officer Watson is trained in CPR.  Mr. Medina pleads Officer Watson acted "maliciously or sadistically with the very purpose of causing harm by not providing CPR."[113] But Mr. Medina fails to plead facts to support this conclusion. We do not credit such conclusory statements.  We dismiss Mr. Medina's deliberate indifference claim against Officer Watson with prejudice as he has now twice failed to plead facts allowing us to plausibly infer Officer Watson acted with a culpable state of mind.

### 4. Mr. Medina pleads a First Amendment retaliation claim against Officer Watson.

Mr. Medina alleges Officer Watson revealed Mr. Medina's private medical information to a group of incarcerated people and then charged him with a misconduct violation for praying during recreation as retaliation for filing grievances against Officer Watson.[114] Mr. Medina alleges the major misconduct violation resulted in the state actors confining him to his cell.[115] The Commonwealth Defendants argue Mr. Medina fails to plead constitutionally protected conduct because (1) there is no causal link between Mr. Medina's grievance and the misconduct charge,

and (2) Mr. Medina did not engage in protected activity because an incarcerated person threatening violence against a corrections officer and her family is not engaged in protected speech under the First Amendment.[116]   We find Mr. Medina plausibly pleads a retaliation claim under the First Amendment.

To plead a First Amendment retaliation claim Mr. Medina must allege "(1) he engaged in constitutionally protected conduct, (2) he suffered an adverse action 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' and (3) the constitutionally protected conduct was 'a substantial or motivating factor' for the adverse action."[117] Where a causal link cannot be shown with direct evidence, an incarcerated person may try to establish the connection by demonstrating "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link."[118] Our Court of Appeals directs "the word 'retaliation' in [an incarcerated person's] complaint sufficiently implies a causal link between [the incarcerated person's] complaints and the misconduct charges filed against him."[119]

We are guided by our Court of Appeals' review of the issues.   In *Kelly v. York County Prison*, an incarcerated person alleged unnamed facility officials denied him employment in retaliation for filing grievances.[120] Our Court of Appeals vacated the dismissal of the incarcerated person's retaliation claim and held the filing of a grievance is protected under the First Amendment.[121]   In *Robinson v. Palco*, an incarcerated person alleged facility officials filed misconduct violations against him resulting in thirty days of cell restriction and ninety days of limited commissary as retaliation for the incarcerated person filing Prison Rape Elimination Act complaints against the officials.[122] Our Court of Appeals reversed the dismissal of the incarcerated person's retaliation claims for failure to plead an adverse action.[123] The court of appeals reasoned

the misconducts constitute "adverse actions" because they resulted in cell restriction and limited commissary, both of which are sanctions "sufficient to deter the exercise of First Amendment rights."[124] State actors allegedly issued these misconducts in response to the incarcerated person's filing of PREA complaints, which is a protected activity under the First Amendment.[125]  The court of appeals considered these allegations sufficient to state a claim for retaliation.  In *Mitchell v. Horn*, our Court of Appeals reversed the dismissal of an incarcerated person's retaliation claim.[126] The incarcerated person alleged a state actor planted illegal drugs under the incarcerated person's locker in retaliation for filing of complaints against the officer.[127] The incarcerated person spent several months in disciplinary confinement as a result of the misconduct charge.[128] Our Court of Appeals held the incarcerated person adequately pleaded a retaliation claim and clarified "the word 'retaliation' in his complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him."[129]

Mr. Medina adequately pleads the elements of a First Amendment retaliation claim against Officer Watson. Mr. Medina alleges:

- "[D]ue to Mr. Medina filing on 10/14/22 grievances for medical negligence…C.O. Watson [retaliated] by writing Mr. Medina up on a DC-141 misconduct on 10/19/22 as retaliation for mentioning on a grievance that she failed to give me CPR on 10/16/22 when I fainted, then breaking HIPPA [sic] law & violating Mr. Medina's First Amendment…for Mr. Medina praying during block out recreational hours;"

- "[Officer Watson] breached this HIPPA [sic] law…by way of retaliation and then went on to write a major misconduct DC-141 against Mr. Medina;"

- "C.O. Watson on 10/19/22 stated…Mr. Medina had a sexually transmitted disease;"

- "C.O. Watson wrote me up for praying and retaliation…for publicly announcing to inmates during block out on 10/19/22 that I had a sexually transmitted disease."[130]

Mr. Medina does not plead the number of grievances he filed and when, but he pleads he filed at least one grievance on October 14.[131]  Filing a grievance constitutes protected activity.[132]

Mr. Medina alleges Officer Watson filed a major misconduct violation five days later on October 19.  Mr. Medina alleges the misconduct violation resulted in cell restriction, as in *Robinson*.[133] Mr. Medina uses the word "retaliation" several times to establish the causal link in his claim just like the incarcerated persons in *Kelly* and *Mitchell*.[134]

Mr. Medina also plausibly alleges Officer Watson's conduct in announcing his sexually transmitted disease status to a group of incarcerated people constitutes "adverse action" at this stage.  We are persuaded by Judge Gardephe's reasoning in *Rosado v. Herard*.[135]  In *Rosado*, a pro se incarcerated person alleged a mental health clinician responsible for treating detainees told other incarcerated people his HIV-positive status.[136] Judge Gardephe denied the mental health clinician's motion to dismiss, finding the question of whether disclosure of an incarcerated person's HIV status would deter a  "similarly situated individual of ordinary firmness" from exercising a right to file a grievance cannot be resolved at the motion to dismiss stage.[137]  We agree and find Mr. Medina's allegations Officer Watson disclosed his sexually transmitted disease status to a group of incarcerated people is sufficient at this stage to allege adverse action.

Commonwealth Defendants argue Mr. Medina is claiming a constitutional right to threaten an officer's family.[138] Commonwealth Defendants misread Mr. Medina's allegations. The "protected activity" at issue is Mr. Medina's filing of medical and PREA grievances against Officer Watson—not the alleged threats to Officer Watson's family.  Contrary to Commonwealth Defendants' claim "no information is pled about the timing of these two events," we find Mr. Medina alleges Officer Watson issued a major misconduct violation *and* announced Mr. Medina's STD status on October 19 in retaliation for Mr. Medina's October 14 grievance.[139]  Mr. Medina pleads a temporal link by alleging Officer Watson retaliated within five days of Mr. Medina filing the grievance.

Mr. Medina plausibly alleges the elements of a retaliation claim against Officer Watson.[140]

### 5. Mr. Medina does not plead a HIPAA claim against Officer Watson but plausibly pleads a violation of a constitutional right.

Mr. Medina alleges Officer Watson violated the Health Insurance Portability and Accountability Act by revealing his sexually transmitted disease to a group of incarcerated people.[141] Commonwealth Defendants argue the Act does not provide a private right of action.[142] We agree. Mr. Medina fails to plead a claim under the Act but adequately pleads Officer Watson's actions violated Mr. Medina's right to privacy in his medical information.

The Act does not provide a private right of action.[143] But "the Fourteenth Amendment protects an inmate's right to medical privacy, subject to legitimate penological interests."[144] "[Privacy] is a narrow constitutional right [which] applies in the case of an unusual medical condition which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence and harm, particularly when word of the condition is likely to spread through 'humor or gossip.'"[145]

Our Court of Appeals recognized an incarcerated person's right to his own medical information years ago in *Doe v. Delie*.[146] In *Delie*, facility medical officials discussed Doe's H.I.V. diagnosis loud enough for incarcerated people to learn of his condition.[147] He alleged state actors violated his right to privacy in his medical records by: facility nurses announcing his medications loudly enough for other incarcerated people to hear; facility staff informing escorting officers of Doe's medical condition; and during physician visits, keeping the clinic room door open, allowing officers, incarcerated people, and guards to see and hear Doe's conversation with a treating physician.[148] Judge Ziegler applied qualified immunity and dismissed his claims.[149] Our Court of Appeals held an incarcerated person has a constitutionally protected right to privacy in their medical information.[150] The court reasoned, "It is beyond question that information about one's

HIV-positive status is information of the most personal kind and that an individual has an interest in protecting against the dissemination of such information."[151] Our Court of Appeals nevertheless affirmed the dismissal of Doe's complaint on the basis of qualified immunity finding an incarcerated person's right to medical privacy is not clearly established.[152]

Mr. Medina pleads Officer Watson violated the Act by revealing his sexually transmitted disease to a group of incarcerated people.[153] Officer Watson is correct; there is no private right of action in the Health Insurance Portability and Accountability Act.[154] But Mr. Medina is a pro se incarcerated person and we have an "obligation to liberally construe a pro se litigant's pleadings."[155] We "apply the applicable law, irrespective of whether [Mr. Medina] has mentioned it by name."[156] We construe Mr. Medina as pleading Officer Watson violated his constitutional right to privacy in his medical information.

Mr. Medina pleads Officer Watson revealed Mr. Medina has a sexually transmitted disease to a group of incarcerated people as retaliation for filing grievances against her.[157] Officer Watson allegedly revealed information "of the most personal kind" about a condition likely to expose Mr. Medina to "ridicule, discrimination, or even potential violence and harm."[158] Mr. Medina has an interest in protecting against the dissemination of this information. We recognize "an inmate's constitutional right may be curtailed by a policy or regulation that is shown to be 'reasonably related to legitimate penological interests.'"[159] But it is difficult to imagine a legitimate penological interest in revealing an incarcerated person's sexually transmitted disease to other incarcerated people in the yard.

Mr. Medina plausibly pleads Officer Watson violated his right to privacy in his medical information and we proceed to discovery with this claim. We dismiss Mr. Medina's HIPAA claim with prejudice as Congress does not grant a private right of action.

**6. We dismiss Mr. Medina's retaliation claim against Sergeant Hopson.**

Mr. Medina alleges he filed a grievance and PREA complaint against Officer Watson, which he "grieved on" Sergeant Hopson.[160] He alleges Sergeant Hopson retaliated against him by sending his personal property from SCI Phoenix to SCI Pine Grove.[161] Commonwealth Defendants argue Mr. Medina does not plead an adverse action because SCI Pine Grove is Mr. Medina's "home jail" and medical records typically follow the incarcerated person.[162] We find Mr. Medina does not plead a plausible retaliation claim against Sergeant Hopson because he fails to plead an adverse action.

Mr. Medina must allege "(1) he engaged in constitutionally protected conduct, (2) he suffered an adverse action 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' and (3) the constitutionally protected conduct was 'a substantial or motivating factor' for the adverse action."[163] Mr. Medina's allegation against Sergeant Hopson is like his allegation against Officer Watson with respect to the first and third elements of a retaliation claim. Mr. Medina pleads Sergeant Hopson retaliated against him for filing a constitutionally protected grievance. Mr. Medina uses the word "retaliation" to describe Sergeant Hopson's actions. But Mr. Medina fails to plead Sergeant Hopson's alleged retaliation resulted in an adverse action.

Mr. Medina alleges Sergeant Hopson twice sent his personal property from SCI Phoenix to SCI Pine Grove despite facility officials placing a medical hold on Mr. Medina.[164] Our Court of Appeals held an incarcerated person can establish an adverse action by showing a facility official destroyed his property as a means of retaliation six years ago in *Brant v. Varano*.[165] In *Brant*, our Court of Appeals vacated the district court's summary judgment dismissal of an incarcerated person's First Amendment retaliation claim based in part on finding the incarcerated person made

a prima facie showing he suffered an adverse action when facility officials destroyed his legal materials because "[h]aving legal materials destroyed during the course of active litigation is more than a de minimis consequence."[166]

Mr. Medina pleads Officer Hopson sent "all his personal property" to a different correctional facility for an unknown period of time.[167] Mr. Medina does not plead his property is lost or destroyed.  He does not plead Officer Hopson's actions affected him "during the course of active litigation" or had an effect on him at all.[168] Mr. Medina fails to plead adverse action "sufficient to deter a person of ordinary firmness" from exercising his right to file grievances.[169] We dismiss Mr. Medina's retaliation claim against Sergeant Hopson with prejudice after two attempts.

### 7.  We dismiss Mr. Medina's retaliation claims against Sergeant Holland and Lieutenant Martin.

Mr. Medina alleges Sergeant Holland and Lieutenant Martin confiscated Mr. Medina's CPAP machine in retaliation for filing grievances on Officer Watson, Sergeant Hopson, and Secretary Little.[170]  Mr. Medina separately alleges Sergeant Holland and Lieutenant Martin confiscated his CPAP machine in retaliation for adding Sergeant Holland and Lieutenant Martin to this lawsuit.[171] Sergeant Holland and Lieutenant Martin argue Mr. Medina's allegations are conclusory because Mr. Medina (1) fails to allege how Sergeant Holland and Lieutenant Martin knew of Mr. Medina's grievances against Officer Watson, Sergeant Hopson, and Secretary Little; (2) the more than six-month gap between Mr. Medina filing the grievances and the confiscation defeats any temporal causal link; and (3) Mr. Medina did not add Sergeant Holland and Lieutenant Martin until after the alleged retaliation occurred.[172] We find Mr. Medina fails to plead a retaliation claim against Sergeant Holland or Lieutenant Martin.

Mr. Medina alleges Sergeant Holland and Lieutenant Martin retaliated against Mr. Medina for filing grievances or adding them to this lawsuit.[173] "There is no dispute… grievances and lawsuits qualify as constitutionally protected conduct."[174] Nor does any state actor dispute Mr. Medina pleads he suffered an adverse action by alleging they confiscated his CPAP machine for over two weeks.[175] The parties dispute only whether Mr. Medina sufficiently pleads a causal link between the protected activity and the alleged retaliation.

Our Court of Appeals affirmed Judge McNulty's dismissal of an incarcerated person's retaliation claim for failure to plead a causal link in *Wilcox v. Martinez*.[176] The incarcerated person in *Wilcox* filed a grievance over a pay disparity.[177] A facility official fired him from his job as a barber for failing to clean his tools six months later.[178]  The court explained, "Where a causal link cannot be shown with direct evidence, a plaintiff may try to establish the connection by demonstrating '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link.'"[179]  Our Court of Appeals held the six month delay and the fact the facility official "was not the subject of the grievance, did not handle the grievance, was not responsible for evaluating the pay difference, and was not alleged to be aware that the grievance had been filed" undermined the suggestion the incarcerated person's grievance led to his firing.[180]

Mr. Medina's claim against Sergeant Holland and Lieutenant Martin fails for the same reason. Mr. Medina alleges Sergeant Holland and Lieutenant Martin retaliated against him for a grievance against different officers.[181] Mr. Medina does not allege Sergeant Holland or Lieutenant Martin handled or evaluated the grievance.[182] Mr. Medina pleads only "these state actors…had access to review this grievance on computer data" and retaliated on the grievance "which was easily found on [Department of Corrections] data records."[183] But Mr. Medina fails to plead

Sergeant Holland or Lieutenant Martin ever accessed this data or learned of his grievance. We find it is not plausible Mr. Medina's grievance caused the confiscation of his CPAP machine where there is no temporal connection between the two events.

Mr. Medina alternatively argues Sergeant Holland and Lieutenant Martin retaliated on May 5, 2023 because Mr. Medina added them to this lawsuit.[184] Our Marshals did not serve Sergeant Holland and Lieutenant Martin until June 6, 2023.[185] Mr. Medina cannot claim Sergeant Holland and Lieutenant Martin retaliated against him for something before it happened unless he can otherwise plead they knew about this lawsuit before being served.  Mr. Medina makes no such allegation.

Mr. Medina fails to state a retaliation claim against Sergeant Holland or Lieutenant Martin. We dismiss Mr. Medina's retaliation claims against Sergeant Holland and Lieutenant Martin with prejudice after two failed attempts to plead facts allowing us to infer a causal link between a protected activity and an adverse action.

### 8.  We dismiss Mr. Medina's claims against Secretary Little.

Mr. Medina claims Pennsylvania Secretary George M. Little is liable for Nurse Savage, Officer Watson, and Sergeant Hopson's alleged retaliation because Secretary Little "had personal involvement and actual knowledge and acquiescence" and "supervisory liability."[186] Commonwealth Defendants argue Secretary Little is not a proper defendant because Mr. Medina fails to plead his personal involvement.[187] We find Mr. Medina fails to state a claim against Secretary Little.

To the extent Mr. Medina attempts to hold Secretary Little liable for the alleged actions of other state actors, we must dismiss this claim as Secretary Little cannot be held liable on a respondeat superior theory.[188] Mr. Medina instead claims "supervisory liability."[189]  "[T]here are

two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations."[190]  Mr. Medina must allege "an underlying constitutional violation" to plead a claim of supervisory liability.[191]  "[A]wareness of a grievance or complaint after the allegedly unconstitutional conduct has occurred, without more, is insufficient to establish personal involvement."[192]

Mr. Medina fails to allege facts allowing us to reasonably infer Secretary Little's personal involvement.  He does not allege Secretary Little directed Ms. Savage to not respond to Mr. Medina's calls for medical assistance.  He does not allege Secretary Little directed Officer Watson not to perform CPR or to retaliate.  Mr. Medina pleads he sent a grievance to "George M. Littles [sic] Office and address" and the state actors "had access to review this grievance on computer data."[193]  Secretary Little's alleged awareness of Mr. Medina's grievance, without more, is insufficient to establish supervisory liability.[194]  Mr. Medina fails to allege facts allowing us to reasonably infer Secretary Little participated in, ordered, or acquiesced in Ms. Savage or Officer Watson's actions or Secretary Little maintained a policy, practice, or custom directly causing the alleged harm.

Mr. Medina only pleads Secretary Little's personal involvement in his retaliation claim against Sergeant Hopson. Mr. Medina claims Sergeant Hopson twice sent his property "under order of" Secretary Little as retaliation for filing grievances against Officer Watson.[195] We earlier dismissed Mr. Medina's constitutional claim against Sergeant Hopson for failing to plead he suffered an adverse action. We find Mr. Medina fails to allege an underlying constitutional

24

violation to support a claim of supervisory liability because Sergeant Hopson did not violate Mr. Medina's constitutional rights.[196]

Mr. Medina adds claims against Secretary Little for "medical negligence," "sever [sic] emotional distress," "official oppression," "official misconduct," and "abuse of power."[197] We "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements."[198] Mr. Medina fails to plead facts to support his conclusion Secretary Little engaged in "official oppression," "official misconduct," or "abuse of power."[199] Mr. Medina fails to plead facts allowing us to infer Secretary Little personally engaged in conduct intentionally inflicting emotional distress upon Mr. Medina. And Mr. Medina fails to plead facts to allow us to infer how Secretary Little, a non-medical provider, could be held liable for medical negligence. Mr. Medina fails to plead a claim with these conclusory statements.

We dismiss Mr. Medina's claims against Secretary Little with prejudice for twice failing to plead facts plausibly alleging Secretary Little is liable for the alleged constitutional violations of various facility officials under a theory of supervisory liability.

### 9.   We dismiss Mr. Medina's conditions of confinement claim.

Mr. Medina alleges heating, ventilation, and air conditioning issues exacerbate his breathing issues.[200] We earlier dismissed Mr. Medina's Eighth Amendment conditions of confinement claim for failing to plead facts allowing us to plausibly infer the poor indoor air quality at his correctional facility constitutes an extreme deprivation. Commonwealth Defendants argue Mr. Medina's allegations do not rise to the level of an "extreme deprivation" required to plead conditions of confinement claim under the Eighth Amendment.[201] Commonwealth Defendants also argue Mr. Medina's allegation the Facility attempted to fix the HVAC issue shows

there is no culpable state of mind on the part of the Commonwealth Defendants.[202]  We find Mr. Medina fails to plead an Eighth Amendment conditions of confinement claim.

"To determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'"[203] "[O]nly 'extreme deprivations' are sufficient to make out a conditions of confinement claim, such as when a prisoner has been denied 'basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety.'" [204] "Factors to be considered include 'the length of confinement, the amount of time prisoners must spend in their cells each day, the opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation, and showers.'"[205]  In a challenge to those conditions, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."[206] A state actor must also act with "a sufficiently culpable state of mind."[207] "A state actor is not deliberately indifferent 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[208]

Mr. Medina pleads an objectively serious deprivation. Our Court of Appeals and colleagues allow allegations to proceed with discovery when an incarcerated person alleges inadequate ventilation combined with factors contributing to a serious risk of harm to the incarcerated person.[209] Mr. Medina claims the Facility experienced HVAC issues around the same time as his October 2022 medical incident which delayed him from communicating with his attorney, delayed a PCRA hearing, and "shut[] down movement" in the Facility as a result of construction.[210] Mr.

Medina also alleges he lacked air flow in his cell, which exacerbated his breathing issues and chronic tonsilitis.[211] Inadequate ventilation combined with his breathing issues and chronic tonsilitis contributed to a serious risk of harm to Mr. Medina.

But we dismiss Mr. Medina's conditions of confinement claim because Mr. Medina fails to plead deliberate indifference by a state actor. Mr. Medina does not allege he notified a particular state actor of his issues nor does he plead a particular state actor acted to deprive him of the air flow in his cell. Mr. Medina only pleads "SCI Phoenix had HVAC issues while he was present at the facility." Mr. Medina cannot sue SCI Phoenix because a correctional institution is not a person for the purposes of a section 1983 claim.[212] Mr. Medina's conditions of confinement claim must fail because he does not plead a state actor deprived him of a necessity or acted with a sufficiently culpable state of mind. Mr. Medina's allegations related to construction on the jail suggest the Facility took remedial measures to try to fix the HVAC issues, further undermining Mr. Medina's claim of deliberate indifference. We dismiss Mr. Medina's conditions of confinement claim with prejudice after two attempts.

### 10. Mr. Medina does not assert a due process claim against the Department of Corrections.

Mr. Medina broadly alleges state actors denied him due process by preventing him from submitting witness testimony in the major misconduct hearing arising from Officer Watson's allegations related to the October 19 prayer incident.[213] "[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest."[214] Mr. Medina does not specify his deprived interest. He alleges someone placed him on cell restriction for certain charges. But he does not allege who violated his rights, who he planned to call as a witness, and what testimony the witness would have offered in his defense.[215] We dismiss Mr. Medina's due process claim as

wholly unsupported by a plead fact. We dismiss Mr. Medina's due process claim without prejudice to allow Mr. Medina one more chance to plead facts allowing us to plausibly infer someone deprived him of a protected liberty interest.

### C.     We grant Wellpath's motion to dismiss.

Mr. Medina sues healthcare provider Wellpath alleging it is liable for the actions of its employees Ms. Woods and Nurse Savage.[216] Mr. Medina also alleges Wellpath was deliberately indifferent to his medical needs by failing to timely send his sleep test results to Temple Hospital.[217] Wellpath argues Mr. Medina fails to plead a custom or policy of deliberate indifference to his serious medical needs or an underlying constitutional violation.[218] Mr. Medina fails to state a claim against Wellpath.

Mr. Medina cannot base his claim on a theory of respondeat superior.[219] Wellpath is a private health company contracted by the Facility to provide medical services to incarcerated people. Wellpath is a state actor for purposes of section 1983.[220] "[A] private health company providing service to [incarcerated people] 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'"[221] Mr. Medina must plead Wellpath "had a policy, custom, or practice, and that the policy, custom, or practice caused the constitutional violation at issue."[222] A policy "is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers."[223] A custom comprises "practices of state officials [which are] so permanent and well settled as to constitute a 'custom or usage' with the force of law."[224]

We dismiss Mr. Medina's claims against Wellpath because he does not plead a policy or custom violating his constitutional rights. Mr. Medina's deliberate indifference claim against Wellpath addresses only actions taken by Wellpath employees including Ms. Woods and Nurse

Savage.  Ms. Woods allegedly failed to provide Mr. Medina a CPAP and failed to provide him CPR.[225]  Nurse Savage allegedly failed to respond to Mr. Medina's medical calls and failed to provide him CPR.[226]  An unidentified Wellpath employee allegedly failed to timely send the results of his sleep test to Temple Hospital.[227]  Mr. Medina pleads no facts allowing us to plausibly infer Wellpath implemented a policy or custom causing Ms. Woods, Nurse Savage, and the unidentified employee to take these actions.  We cannot infer a policy or custom caused the alleged conduct.

We dismiss Mr. Medina's deliberate indifference claim against Wellpath without prejudice to allow Mr. Medina one more chance to plead facts allowing us to plausibly infer Wellpath had a custom or policy of deliberate indifference to incarcerated persons' medical needs.

## III.    Conclusion

We grant Ms. Woods's motion to dismiss.  We dismiss Mr. Medina's Eighth Amendment claim against Ms. Woods because Mr. Medina fails to allege Ms. Woods acted with deliberate indifference.  We dismiss Mr. Medina's state law negligence claim against Ms. Woods because he does not allege Ms. Woods owed him a duty.

We grant in part and deny in part Commonwealth Defendants' motion to dismiss.  We dismiss the Eighth Amendment deliberate indifference claim against Officer Watson because Mr. Medina fails to allege Officer Watson acted with deliberate indifference.  We dismiss the HIPAA claim against Officer Watson because the Act does not provide a private cause of action.  We dismiss the First Amendment retaliation claim against Sergeant Hopson because Mr. Medina fails to plead an adverse action. We dismiss the First Amendment retaliation claims against Sergeant Holland and Lieutenant Martin because there is no causal link between the alleged protected activity and the alleged adverse action.  We dismiss all claims against Secretary Little because Mr. Medina fails to plead his personal involvement in Nurse Savage and Officer Watson's conduct,

there is no underlying constitutional violation to support Mr. Medina's retaliation claim against Sergeant Hopson, and conclusory allegations do not support his claims. We dismiss the Eighth Amendment conditions of confinement claim because Mr. Medina fails to plead deliberate indifference by a state actor. We dismiss Mr. Medina's due process claim as wholly unsupported by his factual allegations.  Mr. Medina pleads an Eighth Amendment deliberate indifference claim against Nurse Savage because Mr. Medina alleges Nurse Savage knew of his serious medical needs and ignored his emergency calls for help. Mr. Medina pleads a First Amendment retaliation claim and Fourteenth Amendment medical privacy claim against Officer Watson based on his allegations Officer Watson announced his sexually transmitted disease status to a group of incarcerated people.  Mr. Medina pleads state law medical negligence claim against Nurse Savage.

We grant Wellpath's motion to dismiss.  We dismiss Mr. Medina's Eighth Amendment deliberate indifference claims against Wellpath because Mr. Medina fails to plead Wellpath had a custom or policy of deliberate indifference to incarcerated persons' medical needs.

---

[1] ECF No. 46 at 15, 17.

[2] *Id.* at 1-2.

[3] *Id.* at 1.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at 3, 6.

[8] *Id.* at 1.

[9] *Id.*

[10] *Id.* at 2.

[11] *Id.* at 1-2.

[12] *Id.* at 2.

[13] *Id.*

[14] *Id.* at 4.

[15] *Id.*

[16] *Id.* at 4, 8.

[17] *Id.* at 2.

[18] *Id.* at 1-2.

[19] *Id.*

[20] *Id.* at 2.

[21] *Id.*

[22] *Id.* at 2, 6, 10.

[23] *Id.* at 2.

[24] *Id.*

[25] *Id.* at 3.

[26] *Id.*

[27] *Id.* at 4, 6.

[28] *Id.* at 3-4, 6.

[29] *Id.* at 2-3, 6-7, 10. The Department of Corrections does not have a policy prohibiting praying alone during recreation. *Id.* at 7.

[30] *Id.* at 3.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 10.  Mr. Medina identified the date of this hearing in an attachment to his Complaint (ECF No. 2) although he does not again plead the date in his amended Complaint.  Mr. Medina attached a "Disciplinary Hearing Report" to his Complaint showing a hearing date of October 21, 2022. ECF No. 2-1 at 19.    The Report shows  the Department found Mr. Medina guilty on two

disciplinary counts and sentenced him to fifteen days cell restriction for each count to be served concurrently.  *Id.*  Mr. Medina does not identify the date of the misconduct hearing again in his amended Complaint.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 6, 10.

[37] *Id.* at 5.

[38] *Id.*

[39] *Id*.

[40] *Id.*

[41] *Id.* at 8.

[42] *Id*.

[43] *Id*.

[44] ECF No. 2.

[45] ECF No. 43. We dismissed Mr. Medina's claim against Ms. Woods without prejudice for failing to plead how her unpleaded role in scheduling surgery or providing Mr. Medina a CPAP machine violated a constitutional right. *Id.* at 2. We dismissed Mr. Medina's claim against Secretary Little without prejudice for failing to plead his personal involvement or supervisory liability. *Id.* at 2-3. We dismissed Mr. Medina's deliberate indifference claims against correctional state actors Savage, Hopson, and Watson without prejudice for failing to plead facts allowing us to plausibly infer these non-medical state actors had reason to believe or knew the medical professionals mistreated him and refused to provide proper treatment for his tonsilitis and through the CPAP machine. *Id.* at 3. We dismissed Mr. Medina's Eighth Amendment conditions of confinement claim for failing to plead facts allowing us to plausibly infer the poor indoor air quality at his correctional facility constitutes an extreme deprivation.  *Id.*  We dismissed his retaliation claims against correctional state actors Hopson, Watson, Martin, and Holland without prejudice for failing to plead facts allowing us to plausibly infer a temporal connection between a protected activity and some form of adverse treatment. *Id.* at 3-4. We dismissed Mr. Medina's HIPAA claim against Officer Watson without prejudice for failing to plead facts allowing us to infer some violation of a federal right. *Id.* at 4. We dismissed Mr. Medina's possible state law claims without prejudice as we did not address a claim within our limited federal jurisdiction.  *Id.*

[46] ECF No. 46.

[47] *Id.* at 1-2, 4, 8, 11.

---

[48] *Id.* at 1-2, 11.

[49] *Id.*

[50] *Id.* at 2, 6, 10.

[51] *Id.* at 10 ("C.O. Watson and RN Monique Savage and Jakie Woods acted with deliberate indifference…these state actors failure to intervene was done …with the very purpose of causing harm by not providing CPR.").

[52] *Id.* at 11.

[53] *Id.* at 5.

[54] *Id.* at 3, 6.

[55] *Id.* at 2-4, 6-7, 10-11.

[56] *Id.* at 8.

[57] *Id.*

[58] *Id.* at 3-5.

[59] *Id.* at 2-4, 6, 11.

[60] *Id.* at 10.

[61] ECF Nos. 53, 54, 56. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility ... a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, we "must accept all factual allegations in the complaint as true and view them in the light most favorable to plaintiffs." *Yogi Krupa, Inc. v. GLeS, Inc.*, 2022 U.S. Dist. LEXIS 203988, 2022 WL 16834164, at *3 (D. Del. Nov. 9, 2022). We

must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79, 69 V.I. 1034 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that ... 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' ... in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations ... and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'..., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

We are "mindful of our 'obligation to liberally construe a pro se litigant's pleadings.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011)). But "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Even a pro se complaint "must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Badger v. City of Phila. Off. Of Prop. Assessment*, 563 F. App'x 152, 154 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[62] ECF No. 46 at 1-2, 11.

[63] ECF No. 43 at 2.

[64] *Id.* at 10.

[65] ECF No. 53-4.

[66] *Id.* at 3-5.

[67] ECF No. 46 at 3-5, 8, 10-11.

[68] *Lawson v. Banta*, No. 20-3444, 2022 WL 1772997, *2 (3d Cir. June 1, 2022) (quoting *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)).

[69] *Gibson v. Johnson & Johnson*, No. 22-4383, 2023 WL 4672388 (E.D. Pa. July 19, 2023) (quoting *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d Cir. 1997)).

[70] *Dooley*, 957 F.3d at 374 (3d Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[71] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

[72] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[73] *Coyle v. Montgomery Cnty.*, No. 21-4704, 2023 WL 2576843, at *11 (E.D. Pa. Mar. 20, 2023) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))

[74] *Mark v. Patton*, 696 F. App'x 579, 581 (3d Cir. 2017) (quoting *Rouse*, 182 F.3d at 197 (3d Cir. 1999)).

[75] ECF No. 47 at 4 ("Here, Plaintiff identified a deprivation, the failure to provide his CPAP.").

[76] *Id.*

[77] ECF No. 46 at 2.

[78] *Id.* at 10.

[79] ECF No. 46 at 11.

[80] *Richardson v. Clark*, No. 22-29, 2023 WL 2290253, at *7 (M.D. Pa. Feb. 28, 2023) (quoting *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003)).

[81] *Id.*

[82] *See Aul v. Correct Care Sols.*, No. 18-2142, 2020 WL 6273888, at *8 (M.D. Pa. Oct. 26, 2020) (dismissing medical negligence claims against medical professionals, finding, "[plaintiff] has failed to set forth with any specificity the duty [medical personnel] owed him as a patient as they are not alleged to have any interaction with him at the time [of the alleged conduct]."); *Gibbons v. Cnty.*, No. 16-1233, 2016 WL 3878182, at *11 (E.D. Pa. July 18, 2016) (dismissing incarcerated person's medical negligence claims against a facility nurse where incarcerated person vaguely alleged the nurse had responsibility for his welfare but did not explain the scope of her responsibilities for his care).

[83] ECF No. 54.

[84] ECF No. 46 at 1-2, 10.

[85] ECF No. 54 at 9-10.

[86] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017).

[87] *Williams v. Ferdarko*, 807 F. App'x. 177, 180 (3d Cir. 2020) (*United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

[88] *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017).

[89] *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (internal citations omitted).

[90] ECF No. 46 at 1.

[91] We reject Commonwealth Defendants' argument "it is unclear…whether [Nurse Savage] actually provides medical care or merely supervises other nurses." ECF No. 54 at 9.  Mr. Medina

pleads Nurse Savage examined Mr. Medina before seeing another doctor.  ECF No. 46 at 1 ("Monique Savage at SCI Phoinex [sic] examined me September 10, 2022.").

[92] ECF No. 46 at 1-2.

[93] *Id.*

[94] *Id.* at 2.

[95] *See Hasty v. Cnty. of Montgomery*, No. 12-4335, 2014 WL 830282, at *6 (E.D. Pa. Mar. 4, 2014) ("At this early stage of the proceedings, Plaintiff's allegations of repeated requests for medical assistance through the telephone request system and directly to medical and other staff at the Prison, coupled with the apparent but ignored medical need…are sufficient to meet the minimum pleading requirements to establish deliberate indifference under the due process clause of the Fourteenth Amendment."); *Burns v. Ashraf*, No. 18-3100, 2019 WL 4169838, at *7 (D. Md. Sept. 3, 2019) (finding incarcerated person sufficiently pleaded an Eighth Amendment deliberate indifference claim where he alleged he fell in his cell and cut open his face and nurses failed to respond to call for assistance).

[96] ECF No. 46 at 2.

[97] *Crawford v. McMillan*, 660 F. App'x 113, 116 (3d Cir. 2016).

[98] *Richardson*, 2023 WL 2290253, at *8 (citing Pa. R. Civ. P. 1042.3(a)(1)-(3)).

[99] *Koukos v. Chester Cty.*, No. 16-4602, 2017 WL 549150, at *3-4 (E.D. Pa. Feb. 7, 2017) (citing *Iwanejko v. Cohen & Grigsby P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007)).

[100] Pa. R. Civ. P. 1042.7(a).

[101] *Johnson v. Rivello*, No. 22-1048, 2023 WL 4916396, at *6 (M.D. Pa. Aug. 1, 2023) (citing Pa. R. Civ. P. 1042.7(a)(4) and *Schmigel v. Uchal*, 800 F.3d 113, 124 (3d Cir. 2015)) *cf. Robinson v. Corizon Health, Inc.*, No. 10-7165, 2016 WL 1274045, at *10 (E.D. Pa. Mar. 30, 2016) ("Although defendants do not raise the argument, plaintiff's medical malpractice claims against the individual medical defendants must be dismissed because plaintiff has not filed the certificates of merit which would be required to support his claims under Pennsylvania law.").

[102] *Id.* at 2, 10.

[103] ECF No. 54 at 9.

[104] *Hickey v. Merritt-Scully*, No. 18-1793, 2022 WL 883851, at *11 (M.D. Pa. Mar. 24, 2022) (summary judgment decision).

[105] *Spruill v. Gillis*, 372 F.3d 218, 236 (3d. Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (affirming the district court's summary judgment decision, reasoning, "Prison

officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.").

[106] *McGinnis v. Hammer*, 751 F. App'x 287, 292 (3d Cir. 2018) (quoting *Pearson*, 850 F.3d at 535).

[107] ECF No. 46 at 2.

[108] *Lemire v. Cal. Dept. of Corr. & Rehab.,* 726 F.3d 1062, 1082 (9th Cir. 2013) (citing *McRaven v. Sanders*, 577 F.3d 974, 983 (8th Cir. 2009); *see also, McRaven*, 577 F.3d at 983 ("An officer trained in CPR, who fails to perform it on a prisoner manifestly in need of such assistance, is liable under § 1983 for deliberate indifference."); *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001) (finding corrections officers were not entitled to qualified immunity on deliberate indifference claim where they failed to provide CPR for ten minutes even though they were trained in CPR and the incarcerated person's condition was obviously life threatening); *Est. of Booker v. Gomez*, 745 F.3d 405, 432 (11th Cir. 2014) (affirming district court's denial of qualified immunity, finding, "[O]fficers trained to administer CPR who nonetheless did not do so despite an obvious need demonstrated the deliberate indifference required for an Eighth Amendment claim.")

[109] *Lemire*, 726 F.3d at 1074, 1083, 1085.

[110] *Id.* at 1083.

[111] *Id.*

[112] *Id.* at 1086.

[113] *Id.* at 10.

[114] ECF No. 46 at 2-7, 10-11.

[115] *Id.* at 6, 10.

[116] ECF No. 54 at 12.

[117] *Wilcox v. Martinez*, 858 F. App'x 477, 479 (3d Cir. 2021) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

[118] *Id.* (quoting *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016)).

[119] *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

[120] *Kelly v. York Cnty. Prison*, 340 F. App'x 59, 61 (3d Cir. 2009).

[121] *Id.*

[122] *Robinson v. Palco*, No. 21-2987, 2022 WL 3009746, *1 (3d Cir. July 29, 2022).

[123] *Id.* at *3.

[124] *Id.*

[125] *Id.* (citing *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017)).

[126] *Mitchell*, 318 F.3d at 536.

[127] *Id.* at 526.

[128] *Id.* at 527.

[129] *Id.* at 530.

[130] ECF No. 46 at 2-4, 6.

[131] *Id.* at 2.

[132] *Kelly*, 340 F. App'x at 61.

[133] *Id.* at 6, 10; *Robinson*, 2022 WL 3009746, at *3.

[134] *Id.* at 2-8, 11.

[135] *Rosado v. Herard*, No. 12-8943, 2014 WL 1303513 (S.D.N.Y. Mar. 25, 2014).

[136] *Id.* at *1.

[137] *Id.* at *9-10.

[138] ECF No. 54 at 12.

[139] *Id.* at 2.

[140] We do not read Mr. Medina as asserting a violation of the Free Exercise clause or alleging Officer Watson interfered with his right to free exercise of religion.  He asserts only a First Amendment retaliation claim based on Officer Watson's discipline of Mr. Medina for praying. ECF No. 46 at 5 ("Plaintiff now moves to the facts of First Amendment retaliation facts...which pleads C.O. Watson...interfering with prayer.").

[141] *Id.* at 2-4, 11.

[142] ECF No. 54 at 14.

[143] *Johnson v. WPIC*, 782 F. App'x 169, 170-71 (3d Cir. 2019); *see also Hatfield v. Berube*, 714 F. App'x 99, 105-106 (3d Cir. 2017).

[144] *Smith v. Hayman*, 489 F. App'x 544, 548 (3d Cir. 2012) (citing *Doe v. Delie*, 257 F.3d 309, 323 (3d Cir. 2001)).

[145] *Smith v. Hayman*, No. 09-2602, 2012 WL 1079634, at *18 (D.N.J. Mar. 30, 2012), *aff'd*, 489 F. App'x 544 (3d Cir. 2012).

[146] *Doe v. Delie*, 257 F.3d 309, 316-17 (3d Cir. 2001).

[147] *Id.* at 311-12.

[148] *Id.*

[149] *Id.* at 311.

[150] *Id.* at 317.

[151] *Id.*

[152] *Id.* at 322.

[153] ECF No. 46 at 2- 8, 10-11.

[154] *Johnson*, 782 F. App'x at 170-71.

[155] *Dooley*, 957 F.3d at 374.

[156] *Bowe v. Kijakazi*, No. 21-569, 2022 WL 17978252, at *2 (D. Del. Dec. 28, 2022) (internal citations and quotations omitted).

[157] ECF No. 46 at 2-4, 11.

[158] *Delie*, 257 F.3d at 317; *Smith*, 2012 WL 1079634, at *18.

[159] *Delie*, 257 F.3d at 317 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

[160] ECF No. 46 at 3.

[161] *Id.* at 3, 6.

[162] ECF No. 54 at 13.

[163] *Wilcox*, 858 F. App'x at 479 (quoting *Rauser*, 241 F.3d at 333).

[164] ECF No. 46 at 3, 6.

[165] *Brant v. Varano*, 717 F. App'x 146, 149-50 (3d Cir. 2017); *see also, Lawson v. Ferguson*, No. 19-1739, 2022 WL 377397, at *5 (E.D. Pa. Feb. 8, 2022) ("For the purposes of the motion to dismiss, the Court assumes that prison officials did destroy Plaintiff's personal and legal property during the move to SCI-Phoenix, which certainly would constitute an adverse action at the hands of prison officials."); *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) (in reviewing district court's grant of summary judgment, our Court of Appeals reasoned destroying incarcerated

person's boots and sneakers constitutes adverse action) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981)).

[166] *Brant*, 717 F. App'x at 149, 151.

[167] ECF No. 46 at 3, 6

[168] *Brant*, 717 F. App'x at 149.

[169] *Wilcox*, 858 F. App'x at 479 (quoting *Rauser*, 241 F.3d at 333).

[170] ECF No. 46 at 8.

[171] *Id*.

[172] ECF No. 54 at 13-14.

[173] ECF No. 46 at 8.

[174] *Lawson v. Ferguson*, No. 22-2365, 2023 WL 2770820, *1 (3d Cir. Apr. 4, 2023).

[175] ECF No. 54 at 13-14.

[176] *Wilcox v. Martinez*, 858 F. App'x 477, 479 (3d Cir. 2021).

[177] *Id.* at 478.

[178] *Id*. at 479.

[179] *Id.* (quoting *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

[180] *Id*.

[181] ECF No. 46 at 8.

[182] *Id*.

[183] *Id.* at 4, 8.

[184] ECF No. 46 at 8.

[185] ECF No. 25.

[186] ECF No. 46 at 4-5, 11.

[187] ECF No. 54 at 6-8.

[188] *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (citing *Iqbal*, 556 U.S. at 676).

[189] ECF No. 46 at 5.

[190] *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago*, 629 F.3d at 129 n. 5).

[191] *Islaam v. Kubicki*, 838 F. App'x 657, 661 (3d Cir. 2020) (citing *Santiago*, 629 F.3d at 130).

[192] *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) (quoting *Rode*, 845 F.2d at 1207-08 (3d Cir. 1988)).

[193] ECF No. 46 at 5.

[194] *Delbalso*, 2022 WL 17248100, at *2.

[195] ECF No. 46 at 3.

[196] *Islaam*, 838 F. App'x at 661.

[197] ECF No. 46 at 11.

[198] *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)).

[199] ECF No. 46 at 11.

[200] ECF No. 46 at 5.

[201] ECF No. 54 at 10-11.

[202] *Id.* at 11.

[203] *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

[204] *Pena v. Clark*, No. 21-2931, 2022 WL 897037, *2 (3d Cir. Mar. 28, 2022) (internal citations and quotations omitted).

[205] *Gilblom v. Gillipsie*, 435 F. App'x 165, 168 (3d Cir. 2011) (quoting *Tillery v. Owens*, 907 F.2d 418, 427 (3d Cir. 1990)).

[206] *Farmer*, 511 U.S. at 834.

[207] *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (citing Thomas v. Tice, 948 F.3d 133, 138 (3d Cir. 2020)).

[208] *Zuber v. Sorber*, No. 22-3661, 2023 WL 3077807, at *5 (E.D. Pa. Apr. 21, 2023) (quoting *Farmer*, 511 U.S. at 837).

[209] *See, e.g., Jones v. Sec'y Pennsylvania Dep't of Corr.,* 589 F. App'x 591, 592 (3d Cir. 2014) (granting summary judgment when discovery did not reveal facts supporting the incarcerated

person's allegation a piece of tape on his door blocked ventilation to his cell); *Wheeler v. Beard*, No. 3-4826, 2005 WL 1840159, at *10 (E.D. Pa. Aug. 3, 2005) ("The government's motion to dismiss plaintiffs' claim relating to excessive heat and poor ventilation in the SCIG dining halls is therefore denied."); *Griffin v. Beard*, 2009 WL 179778, at *4 (M.D. Pa. Jan. 26, 2009) (holding an incarcerated person plausibly alleged conditions of confinement when he claimed "the prison lacks adequate ventilation, a thick black smoke covers 'the yard,' and rodents have infested the correctional institution").

[210] ECF No. 46 at 5.

[211] *Id.*

[212] *Brown v. Pennsylvania, Wayne County*, No. 22-1506, 2023 WL 3376547, *2 (3d Cir. 2023) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

[213] ECF No. 46 at 10.

[214] *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011).

[215] *See Jackson v. Holland*, No. 20-5207, 2021 WL 1696280, at *4 (E.D. Pa. Apr. 28, 2021) (dismissing incarcerated person's due process claim, reasoning, "His conclusory assertion that he was denied the opportunity to call witnesses is unsupported by any factual allegations such as which, if any, of the named Defendants acted to violate his rights, who he sought to call as a witness and what that witness might have offered in his defense to the misconduct charge.").

[216] ECF No. 46 at 1-2, 3, 4, 10-11.

[217] *Id.* at 1-2, 11.

[218] ECF No. 56 at 4-9.

[219] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[220] *See Howard v. Wellpath, LLC*, No. 22-3241, 2023 WL 2226797, at *3 (E.D. Pa. Feb. 24, 2023) (treating Wellpath as a state actor under section 1983); *Hardy v. Shaikh*, No. 18-01707, 2021 WL 426238, at *4 (M.D. Pa. Feb. 8, 2021) (same).

[221] *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)).

[222] *Id.*; *see also Ludwig v. Wellpath, LLC*, No. 22-487, 2022 WL 1500556, at *1 (E.D. Pa. May 12, 2022) ("A municipal employer or a private employer who is a state actor such as Wellpath can only be held liable if the constitutional violation was the result of a policy or custom of the municipality or private entity.") (citing *Monell v. Dep't of Soc. Servs of New York*, 436 U.S 658, 691 (1978)).

[223] *Blasi v. Borough of Pen Argyl*, No. 14-1354, 2015 WL 4486717, at *5 (E.D. Pa. July 23, 2015).

[224] *Monell*, 436 U.S. 658 at 691.

[225] ECF No. 46 at 2, 10.

[226] *Id.* at 2, 10.

[227] *Id.* at 1-2, 11.