IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM OMAR MEDINA | : CIVIL ACTION |
| | : |
| v. | : NO. 23-886 |
| | : |
| GEORGE M. LITTLE, MONIQUE SAVAGE, JAKIE WOOD, SGT D. HOPSON, C.O. WATSON, LT. MARTIN, SGT. HOLLAND, and WELLPATH LLC | : |

## ORDER-MEMORANDUM

**AND NOW**, this 12th day of December 2023, upon considering the incarcerated Plaintiff's pro se Motion to amend our November 20, 2023 Order (ECF No. 59) to grant him an extension of time and appoint counsel (ECF No. 61), our March 9, 2023 Order (ECF No. 5) granting leave to proceed *in forma pauperis*, and mindful of our November 20, 2023 Order (ECF No. 59) allowing Plaintiff leave to file a second amended Complaint and produce a certificate of merit if he wishes to proceed on a medical negligence claim, and finding good cause given an alleged lockdown in the Facility but not to appoint counsel at this early stage, it is **ORDERED** we grant Plaintiff's Motion (ECF No. 61) **in part** requiring we:

1. **Grant** Plaintiff leave to file a second amended Complaint by no later than **January 26, 2024** and a certificate of merit by no later than **February 29, 2024;**

2. **Amend** paragraph 2(g) of our November 20, 2023 Order (ECF No. 59) only to **grant** Nurse Savage and Officer Watson leave to answer the three claims against them by no later than **February 2, 2024** (absent Plaintiff filing a second amended Complaint under paragraph 1 of this Order); and

3. **Deny** Plaintiff's request for appointment of counsel without prejudice to be renewed following the close of the pleadings and as necessary for discovery.

## *Analysis*

Repeat incarcerated litigant William Omar Medina sued various correctional officials, medical professionals, and their employers alleging retaliation, deliberate indifference, inadequate conditions of confinement, and Health Insurance Portability and Accountability Act violations.[1] We screened Mr. Medina's allegations consistent with Congress's mandated obligations in section 1915 and dismissed his claims with leave to amend to plead facts consistent with his claims.[2] Mr. Medina amended his Complaint.[3] Jakie Woods, the Commonwealth Defendants, and Wellpath moved to dismiss the claims in the Amended Complaint.[4] We allowed Mr. Medina to proceed into discovery on some of his claims and granted Mr. Medina leave to file a second amended Complaint by December 21, 2023 if he can plead due process claims against identified state actors and deliberate indifference against Wellpath LLC.[5] We also granted Mr. Medina leave to file a certificate of merit by January 30, 2024.[6]

Mr. Medina requests we now appoint him counsel as part of his second amended Complaint. We recognize constitutional challenges involving incarcerated persons can be

---

[1] ECF No. 2.

[2] ECF No. 43.

[3] ECF No. 46.

[4] ECF Nos. 53, 54, 56.

[5] ECF No. 59 ¶¶ 2(g), 4. We allowed the parties to proceed into discovery on the Eighth Amendment deliberate indifference claim against Nurse Savage, the First Amendment retaliation claim against Officer Watson, and the Fourteenth Amendment medical privacy claim against Officer Watson and required Nurse Savage and Officer Watson answer these three claims by no later than December 28, 2023 (absent Plaintiff filing a second amended Complaint before the Answer date). We today amend this obligation as Mr. Medina may now file a second amended Complaint by January 26, 2024.

[6] *Id.* at ¶ 2(h).

2

complex. But we decline to appoint counsel at this very preliminary stage. We need to evaluate the pleaded facts in a possible second amended complaint. Mr. Medina pleads some facts although he does not plead facts allowing us to plausibly infer (1) Wellpath had a policy or custom of deliberate indifference to incarcerated persons' medical needs or describe his deliberate indifference claims against Wellpath LLC, or (2) an identified person deprived him of a protected liberty interest. A lawyer cannot create those facts but could, after we review a timely second amended Complaint, marshal the facts, obtain further discovery, and prepare for trial.

Although Congress through 28 U.S.C. § 1915(e)(1) permits us to appoint counsel in civil rights cases for indigent prisoners, our Court of Appeals emphasizes "volunteer lawyer time is extremely valuable," and "district courts should not request counsel . . . indiscriminately."[7] "Civil litigants have no constitutional or statutory right to appointed counsel."[8] Nevertheless, Congress has provided "[t]he court may request an attorney to represent any person unable to afford counsel," granting us "'broad discretion' to determine whether appointment of counsel in a civil case would be appropriate."[9]

We undertake a two-step inquiry under our Court of Appeals' guidance in *Tabron*. We must first consider the merits of the claim, deciding whether it has "arguable merit."[10] If so, we then consider a non-exhaustive list of factors, including (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which the factual

---

[7] *Tabron v. Grace*, 6 F.3d 147, 157 (3d Cir. 1993).

[8] *Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019) (citing *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002)).

[9] *Montgomery*, 294 F.3d at 498 (quoting *Tabron*, 6 F.3d at 153).

[10] *Houser*, 927 F.2d at 697 (citing *Tabron*, 6 F.3d at 155).

investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) the plaintiff's ability to retain and afford counsel.[11] These same factors apply to first and subsequent requests, regardless of the stage of the case, and we "should consider the *Tabron* guideposts that may be relevant . . . at the time and stage of the litigation that the request is made."[12] Our Court of Appeals cautions "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases."[13]

We cannot yet determine whether Mr. Medina's additional claims have arguable merit. We cannot turn to the remaining *Tabron* factors yet. We will have a better idea after screening his second amended Complaint, possible motions to dismiss, and close of the pleadings.

Even if we addressed the *Tabron* factors at this stage, we could not approve compelling an attorney to undertake a voluntary representation without more detail developed after the close of the pleadings. Mr. Medina appears capable of presenting his own case. Second, the legal issues involved in this case are not so complex at this preliminary stage as to require the aid of counsel. Third, the fact investigation necessary to prosecute Mr. Medina's claims appear to be in the public record and are otherwise known to him. While it is possible his claims may involve credibility determinations, we are not near this issue yet. The case may involve expert witnesses. As for the

---

[11] *Id.* (citing *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997); *Tabron*, 6 F.3d at 155-56).

[12] *Id.* at 700.

[13] *Montgomery*, 294 F.3d at 499 (cited in *Houser*, 927 F.3d at 700).

sixth factor, Mr. Medina alleges he cannot afford counsel.[14] At this stage, these factors together weigh in favor of denying Mr. Medina's motion for appointment of counsel without prejudice.

After carefully considering our Court of Appeals's *Tabron* factors, we cannot conclude Mr. Medina's claims at this stage require counsel. His filings suggest enough literacy, education, and ability to understand language to support a finding he is able to present his case. Although *pro se* litigants who are incarcerated always face greater challenges than other litigants in bringing civil rights claims, which can be complex, after weighing these obstacles against the issues presented by this case, we are not persuaded an appointment of counsel is presently warranted.

KEARNEY, J.

---

[14] ECF No. 61.