IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM OMAR MEDINA** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 23-886 |
| | : | |
| **MONIQUE SAVAGE and C.O.** | : | |
| **WATSON** | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                   **August 27, 2024**

Prisons regularly address grievances about correctional officers and medical personnel from incarcerated persons. The facilities prepare and distribute detailed procedures telling the incarcerated persons how to complain ("grieve") and appeal their claim of a state actor's or medical professional's perceived unconstitutional or improper conduct towards them. The facilities also prepare and distribute detailed procedures allowing incarcerated persons to challenge a misconduct charge and then appeal if unsatisfied with the findings. We today address an incarcerated person's claims of deprivation of medical care and retaliation by state actors for filing grievances by issuing a misconduct charge against him. We allowed these claims to proceed into discovery based on the allegations. But discovery now confirms, with no genuine issue of material fact, the incarcerated person did not exhaust his grievance process or his ability to challenge the misconduct charge. Congress bars him from proceeding on his constitutional claims unless he exhausted his administrative remedies. His reason for not exhausting relates to moving between facilities and is flatly contradicted by the record and calendar. No person thwarted his ability to grieve or appeal. Discovery confirms he did not exhaust his administrative remedies. We grant summary judgment in favor of the medical professional and state actor on all claims.

I.  **Undisputed Facts**

The Commonwealth presently holds William Omar Medina in custody at State Correctional Institution Pine Grove.[1] The Commonwealth temporarily housed Mr. Medina at State Correctional Institution Phoenix to provide him medical care.[2] Mr. Medina suffered from enlarged tonsils and trouble breathing.[3] An unnamed doctor diagnosed Mr. Medina with tonsillitis.[4]

***The Department identifies procedures to grieve medical issues and discipline misconduct.***

The Pennsylvania Department of Corrections maintains an official grievance system.[5] Mr. Medina admits he is aware of the grievance procedure.[6] The Department's grievance procedure consists of three steps: (1) Initial Review; (2) Appeal to Facility Manager; and (3) Appeal to the Secretary's Office of Inmate Grievance and Appeals for final review.[7]

At the initial grievance step, an incarcerated person presents his grievance to the Facility Grievance Coordinator for initial review.[8] The Facility Grievance Coordinator makes an initial determination of the merits of the grievance. At the second step, the incarcerated person may appeal an adverse determination by the Facility Grievance Coordinator to the Facility Manager within fifteen working days from the date of the initial determination.[9] At the third step, an incarcerated person may appeal the Facility Manager's decision to the Secretary's Office of Inmate Grievances and Appeals within fifteen working days of the Facility Manager's decision.[10]

The Department also maintains a discipline system for Mr. Medina and other incarcerated persons.[11] Incarcerated persons must address concerns with a misconduct charge through the Inmate Discipline System; they do not use the Grievance System.[12] A Hearing Examiner hears and resolves the misconduct charge.[13] Incarcerated persons found guilty by the Hearing

Examiner may appeal to a Program Review Committee within fifteen calendar days.[14] The Program Review Committee reviews and decides the appeal.[15] The incarcerated person may then appeal the Committee's decision to the Facility Manager within seven calendar days of receiving the Program Review Committee decision.[16] The incarcerated person may then appeal to the Chief Hearing Examiner.[17] The charged incarcerated person has four opportunities to challenge the misconduct charge.

### *October 14–16, 2022 medical incidents and Mr. Medina's grievance.*

Mr. Medina alleges he placed sick calls on October 14 and October 15, 2022.[18] Mr. Medina alleges Corrections Officer Berger responded to the sick calls by telling Mr. Medina Nurse Savage would not permit him to go to the Facility's medical department because a continuous positive airway pressure (CPAP) machine was "on its way" to Mr. Medina.[19]

Mr. Medina alleges he awoke on the morning of October 16, 2022 with trouble breathing.[20] Mr. Medina alleges he fainted in his cell, fell, and hit his head on the ground.[21] Mr. Medina alleges Officer Watson responded and did not provide Mr. Medina with CPR.[22] Unidentified persons transferred Mr. Medina to the Facility's medical department on October 16, 2022.[23] Nurse White treated Mr. Medina when he arrived at the medical department.[24] Nurse Savage did not provide Mr. Medina treatment on October 16, 2022.[25]

Mr. Medina submitted a grievance dated October 14, 2022 alleging:

- Someone denied him medical attention on October 14, 2022 during the night shift;

- His cellmate M Carson pressed the intercom button on October 15, 2022 "for the second night in the row" and someone told Mr. Carson "medical will not come"; and,

- Mr. Medina was "dizzy due to two days of no medication attention" and "fainted due to not breathing on [October 16, 2022]."[26]

Mr. Medina does not name Nurse Savage in the grievance.[27] The Grievance Officer denied the grievance regarding denial of medical care on November 10, 2022.[28] Nurse Savage responded to Mr. Medina's grievance by explaining his patient chart does not indicate sick calls from October 14, 2022; the medical department treated him for a fall on October 16, 2022; and Mr. Medina received his CPAP machine on October 24, 2022.[29] Mr. Medina does not recall receiving the Grievance Officer's response.[30] Mr. Medina did not appeal the denial of his medical care grievance.[31]

### *October 19, 2022 allegations and misconduct charge.*

Mr. Medina alleges Officer Watson announced to other inmates Mr. Medina has herpes on October 19, 2022.[32]

Officer Watson issued Mr. Medina a misconduct charge on October 19, 2022 for refusing to obey an order, threatening an employee or their family with bodily harm, presence in an unauthorized area, using abusive or inappropriate language to or about an employee, and engaging in or encouraging unauthorized group activity.[33]

The Department held a disciplinary hearing on October 21, 2022.[34] The Hearing Examiner found Mr. Medina guilty of refusing to obey an order and presence in an unauthorized area.[35] Mr. Medina appealed the decision to the Program Review Committee.[36] The Program Review Committee upheld the verdict.[37] Mr. Medina did not appeal the Program Review Committee's decision to the Facility Manager or Chief Hearing Examiner.[38]

### *Grievance related to Officer Watson's October 19 conduct.*

Mr. Medina submitted a grievance dated October 19, 2022 alleging:

- Officer Watson abused her authority by retaliating against him by giving him a misconduct charge;

4

- Officer Watson aggressively ordered Mr. Medina to stop praying in the back of the cell block and threatened to pepper spray him; and,

- Officer Watson yelled Mr. Medina has herpes while Mr. Medina was on the phone with his mother.[39]

The Facility Grievance Coordinator rejected the grievance on October 21, 2022 for failure to comply with the Department's policy requiring incarcerated persons address issues with their misconduct charges through the Inmate Discipline System.[40] Mr. Medina appealed the grievance to the Secretary's Office of Inmate Grievances and Appeals.[41] The Assistant Chief Grievance Officer responded to Mr. Medina's appeal on November 16, 2022, explaining Mr. Medina must first submit his appeal to the Facility Manager.[42] Mr. Medina received this response.[43] There is no evidence Mr. Medina properly appealed this grievance.[44]

*The Commonwealth transfers Mr. Medina's belongings.*

The Commonwealth transferred Mr. Medina's belongings from SCI-Phoenix to SCI-Pine Grove on October 24, 2022.[45] The Commonwealth returned the materials on November 21, 2022.[46] The Commonwealth transferred Mr. Medina to SCI-Pine Grove on December 13, 2022.[47]

**II.   Analysis**

Mr. Medina sued various Facility officials and medical professionals and their employers alleging retaliation, deliberate indifference, inadequate conditions of confinement, Health Insurance Portability and Accountability Act violations, and vicarious liability.[48] Mr. Medina alleged medical professionals and state actors were deliberatively indifferent to his chronic tonsilitis and breathing issues and retaliated against him when he complained he was denied medical treatment. State actors moved to dismiss Mr. Medina's claims.[49] We reviewed Mr.

Medina's allegations and dismissed his claims with leave to amend to plead facts consistent with his claims.⁵⁰

Mr. Medina amended his Complaint. State actors again moved to dismiss Mr. Medina's claims.⁵¹ We reviewed Mr. Medina's amended Complaint. We permitted Mr. Medina to proceed on his Eighth Amendment deliberate indifference and state law medical negligence claims against Nurse Savage, his First Amendment retaliation claim against Officer Watson, and his Fourteenth Amendment medical privacy claim against Officer Watson.⁵² The parties proceeded into discovery.

Officer Watson and Nurse Savage now timely move for summary judgment.⁵³ They argue they are entitled to summary judgment because: (1) Mr. Medina did not exhaust his administrative remedies, (2) Mr. Medina does not state a section 1983 claim; and, (3) they are entitled to qualified immunity. Mr. Medina responded to the Motion repeating the allegations in his amended Complaint and disputing the facts in the record.⁵⁴

We enter summary judgment in favor of Nurse Savage and Officer Watson requiring we dismiss the Eighth Amendment deliberate indifference claim against Nurse Savage, the First Amendment retaliation claim against Officer Watson, and the Fourteenth Amendment medical privacy claim against Officer Watson. We decline to exercise supplemental jurisdiction over Mr. Medina's lone remaining state law negligence claim after he did not file the required certificate of merit to proceed with his claim.

    **A.**    **We enter summary judgment dismissing Mr. Medina's unexhausted Eighth Amendment deliberate indifference claim against Nurse Savage.**

Nurse Savage moves for summary judgment on Mr. Medina's Eighth Amendment deliberate indifference claim against her. She argues (1) Mr. Medina did not exhaust his administrative remedies because he did not appeal the initial grievance response, (2) Mr. Medina

6

procedurally defaulted his claim because he did not mention Nurse Savage in his medical care grievance, and (3) Nurse Savage was not personally involved in the alleged violation regardless of his failure to exhaust. Mr. Medina did not exhaust the Department's grievance process regarding his denial of medical care claim or offer a valid reason for excusing the failure to exhaust requiring we enter summary judgment in favor of Nurse Savage and dismiss his Eighth Amendment deliberate indifference claim against Nurse Savage.

### 1. Mr. Medina did not exhaust his deliberate indifference claim against Nurse Savage.

Congress, through the Prison Litigation Reform Act, prohibits an action "with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[55] Denial of medical care is a "prison condition" under the Act.[56] Mr. Medina must "properly" exhaust a claim.[57] "Proper" exhaustion means exhaustion of administrative remedies available to the prisoner through the prison's grievance process.[58]

Exhaustion under the Act is mandatory.[59] There is no futility exception to the Act's exhaustion requirement.[60] An untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the Act.[61] A prisoner may not satisfy the exhaustion requirement after the filing of a complaint.[62] "Failure to exhaust administrative remedies results in a procedural default, precluding federal review of the claim."[63]

We determine whether Mr. Medina properly exhausted his claims by evaluating his compliance with the Pennsylvania Department of Corrections's grievance system. "Under the Pennsylvania Department of Corrections's (DOC) grievance system, a prisoner must complete a three-step process including the filing of a grievance with the facility grievance coordinator, an appeal to the facility manager, and a final appeal to the Secretary's Office of Inmate Grievances

7

and Appeals (SOIGA)."[64]

Mr. Medina grieved his denial of medical care claim. The Grievance Officer denied his medical care grievance on November 10, 2022.[65] Mr. Medina did not appeal the Grievance Officer's decision to the Facility Manager or the Secretary's Office of Inmate Grievance and Appeals for final review.[66] Mr. Medina did not exhaust his Eighth Amendment claim against Nurse Savage.

### 2. We do not excuse Mr. Medina's failure to exhaust.

Mr. Medina claims he could not appeal his medical care grievance because the Commonwealth transferred his belongings to SCI-Pine Grove and he did not have access to his legal papers or grievances to review.[67] We do not excuse Mr. Medina's failure to exhaust because he does not establish the state actors made the appeal process unavailable to him.

Our Supreme Court identifies three circumstances in which an administrative remedy exists "officially on the books" but is not available to an incarcerated person.[68] "[A] prison grievance process is unavailable—and thus may be deemed exhausted—in three circumstances: (1) when the remedy 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use'; and (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"[69] "[O]nce the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him."[70]

We are guided by Judge Lanzillo's reasoning in *Davis v. Oberlander*.[71] The incarcerated Gary Davis sued various state actors working in a correctional facility for constitutional

8

violations under the First, Fifth, and Eighth Amendments. The state actors established Mr. Davis did not exhaust his administrative remedies because he never appealed a grievance to the Secretary's Office of Inmate Grievances and Appeals.[72] Judge Lanzillo reasoned the "onus" fell on Mr. Davis to show the appeal was unavailable to him.[73] Mr. Davis argued the administrative remedies were unavailable to him because he tried to appeal his grievance to final review but unidentified prison officials "thwarted" his efforts through "mailing issues."[74] Judge Lanzillo rejected Mr. Davis's argument reasoning, "he has provided no factual record to support his claim that the DOC obstructed his access to the mail" and his "unsupported assertion that 'mailing issues' deprived him of the ability to appeal his grievance is insufficient to create a genuine issue of material fact on an issue concerning which he bears the ultimate burden of proof."[75]

Nurse Savage established Mr. Medina did not exhaust his remedies. The onus falls on Mr. Medina to show the administrative remedies were unavailable to him. Mr. Medina does not argue the Department's grievance system is "a dead end" or "opaque." Mr. Medina's offered excuse for his failure to exhaust is the transfer of his belongings from SCI-Phoenix to SCI-Pine Grove which temporarily deprived him of access to his documents. But Mr. Medina does not offer evidence to suggest the Commonwealth thwarted him from taking advantage of the grievance process through machination, misrepresentation, or intimidation. Mr. Medina provides no factual support to show some unnamed state actor's transfer of his belongings deprived him of the ability to properly appeal his grievance or a state actor interfered or prevented him from using the grievance process. He does not adduce evidence the Commonwealth took this action to interfere with his ability to timely appeal. Mr. Medina has the ultimate burden of proof on this issue. Mr. Medina's unsupported assertion the transfer of his belongings stopped him from appealing is insufficient to create a genuine issue of material fact.

9

We would not excuse Mr. Medina's failure to exhaust even if Mr. Medina could show the Commonwealth thwarted him from taking advantage of the grievance process. "[A]n inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed."[76] Our Court of Appeals in *Talley v. Clark* recently held a state prisoner who has been obstructed in some way from filing a grievance is required to request an extension to file the grievance after the impediment is removed.[77]

The Commonwealth sent Mr. Medina's belongings to SCI-Pine Grove on October 24, 2022.[78] The Grievance Officer denied his grievance on November 10, 2022.[79] Mr. Medina had fifteen working days to appeal the Grievance Officer's November 10, 2022 decision—or, until December 1, 2022. The Commonwealth returned Mr. Medina's belongings on November 21, 2022. Mr. Medina could have appealed in the time period between November 21, 2022 and December 1, 2022 but he did not. Mr. Medina could have requested an extension to file the grievance once the Commonwealth returned his belongings. He did not. As a repeat filer, Mr. Medina is not unfamiliar with federal litigation and the need to exhaust his administrative remedies.[80] We cannot excuse his failure.

We find no genuine dispute of material fact the transfer of Mr. Medina's property did not render the grievance system remedies unavailable to him. We need not consider Nurse Savage's arguments as to procedural default or the merits of the constitutional claim.[81]

**B.    We enter summary judgment dismissing Mr. Medina's unexhausted First Amendment retaliation and Fourteenth Amendment medical privacy claims against Officer Watson.**

Officer Watson moves for summary judgment on Mr. Medina's First Amendment and Fourteenth Amendment claims arguing Mr. Medina failed to exhaust his administrative

10

remedies. Mr. Medina did not exhaust the Department's grievance process for his claims against Officer Watson or offer any reason allowing us to excuse his failure to exhaust. We enter summary judgment in favor of Officer Watson requiring we dismiss his First Amendment and Fourteenth Amendment claims.

Mr. Medina grieved Officer Watson on October 19, 2022 for retaliating against him by issuing a misconduct and publicly announcing he has herpes. The Facility Grievance Coordinator rejected his grievance on October 21, 2022 for failure to comply with the Department's policy requiring inmates address issues with their misconduct charges through the Inmate Discipline System.[82] Mr. Medina improperly appealed the Facility Grievance Coordinator's decision to the Secretary's Office of Inmate Grievances and Appeals instead of the Facility Manager.[83] The Assistant Chief Grievance Officer responded to Mr. Medina's appeal on November 16, 2022 explaining Mr. Medina needs to submit his appeal to the Facility Manager first.[84] Mr. Medina received the response but did not resubmit the appeal to the Facility Manager.[85]

Mr. Medina pursued remedies through the Inmate Discipline System but he did not exhaust these remedies. Mr. Medina appealed the Hearing Examiner's decision on the misconduct charge to the Program Review Committee, but he did not appeal the ruling to the Facility Manager or Chief Hearing Examiner. Mr. Medina did not exhaust his remedies through either the Grievance System or the Inmate Discipline System.

The onus falls on Mr. Medina to show these remedies were unavailable to him. Mr. Medina again argues we should excuse his failure to exhaust because he did not have any access to his documents when the Commonwealth transferred his belongings from SCI-Phoenix to SCI-Pine Grove. We reject this argument for the reasons explained above. Mr. Medina does not offer any evidence to suggest the Commonwealth "thwarted" him from taking advantage of the

11

grievance process. Mr. Medina does not show the Commonwealth took any action to interfere with his ability to timely or properly appeal the denial of his grievance against Officer Watson. Mr. Medina does not meet his burden of showing the administrative remedies were unavailable to him. We need not decide the merits of the constitutional claims against Officer Watson.

We find no genuine dispute of fact (1) Mr. Medina did not exhaust his administrative remedies for his claims against Officer Watson, and (2) the transfer of Mr. Medina's property did not render the grievance system remedies unavailable to him.

C. **We decline to exercise supplemental jurisdiction over the state law claims.**

Mr. Medina invoked our limited federal question jurisdiction. We today dismiss all claims over which we have federal question jurisdiction. Mr. Medina also brings a state law medical negligence claim against Nurse Savage.

We could exercise supplemental jurisdiction over Mr. Medina's medical negligence claim under 28 U.S.C. § 1367(a). But our supplemental jurisdiction is discretionary.[86] We "may decline to exercise supplemental jurisdiction" over a claim if one of four factors exists:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[87]

We decline to exercise supplemental jurisdiction over Mr. Medina's medical negligence claim because we dismissed all claims over which we have original jurisdiction. We also dismiss this claim based on Mr. Medina's failure to file a certificate of merit under our Orders.[88]

**III. Conclusion**

We enter summary judgment in favor of Nurse Savage and Officer Watson. We dismiss Mr. Medina's Eighth Amendment claim against Nurse Savage and his First and Fourteenth Amendment claims against Officer Watson. We dismiss Mr. Medina's state law medical negligence claim against Nurse Savage because he did not file a certificate of merit after extended delay and we decline to exercise supplemental jurisdiction over this claim.

---

[1] ECF No. 88 SUMF ¶ 1; ECF No. 88-2, Appendix DEF005.

[2] ECF No. 88 SUMF ¶ 2; ECF No. 88-3, Appendix DEF067–68.

[3] ECF No. 88 SUMF ¶ 6; ECF No. 88-2, Appendix DEF006.

[4] ECF No. 88 SUMF ¶ 6; ECF No. 88-3, Appendix DEF067.

[5] ECF No. 88 SUMF ¶ 33; ECF No. 88-2, Appendix DEF047. We derive the details of the grievance system from the Department of Corrections' Inmate Grievance System Procedures Manual which we take judicial notice. DC-ADM 804, Inmate Grievance System Policy, https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf (May 1, 2015); *see Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim).

[6] ECF No. 88 SUMF ¶ 33; ECF No. 88-2, Appendix DEF047–48.

[7] ECF No. 88-2, Appendix DEF047–48.

[8] *Id.*

[9] *Id.*, Appendix DEF048. "Working days" is defined as Monday through Friday. DC-ADM 804, Glossary of Terms.

[10] ECF No. 88-2, Appendix DEF048.

---

[11] We derive the details of the inmate discipline procedure from the Department of Corrections' Policy Statement on Inmate Discipline of which we take judicial notice. DC-ADM 801, Inmate Discipline Procedures Manual, https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/801%20Inmate%20Discipline.pdf (May 23, 2022); *see Buck*, 452 F.3d at 260.

[12] DOC-ADM 804 § 1.A.7.

[13] DC-ADM 801, § 1.A.1.

[14] *Id.* § 5.A.1.

[15] *Id.* § 5.A.

[16] *Id.* § 5.B.1.

[17] *Id.* § 5.C.

[18] ECF No. 88 SUMF ¶¶ 7–8; ECF No. 88-2, Appendix DEF009; ECF No. 88-7, Appendix DEF104.

[19] ECF No. 88 SUMF ¶ 9; ECF No. 88-2, Appendix DEF010–12.

[20] ECF No. 88 SUMF ¶ 10; ECF No. 88-2, Appendix DEF008–9.

[21] ECF No. 88 SUMF ¶ 11; ECF No. 88-7, Appendix DEF104.

[22] ECF No. 88 SUMF ¶ 12; ECF No. 88-2, Appendix DEF031–32.

[23] ECF No. 88 SUMF ¶ 14; ECF No. 88-2, Appendix DEF018–19.

[24] ECF No. 88 SUMF ¶ 14; ECF No. 88-4 at 1–7, Appendix DEF084–90.

[25] ECF No. 88 SUMF ¶ 12; ECF No. 88-2, Appendix DEF028.

[26] ECF No. 88-7, Appendix DEF105.

[27] ECF No. 88-2, Appendix DEF050–51.

[28] *Id.*, Appendix 053; ECF No. 88-7, Appendix DEF104.

[29] ECF No. 88-7, Appendix DEF104.

[30] ECF No. 88-2, Appendix DEF061–62.

---

[31] *Id.*, Appendix DEF054.

[32] *Id.*, Appendix 037; ECF No. 88-3, Appendix 072.

[33] ECF No. 88 SUMF ¶ 24; ECF No. 88-9, Appendix DEF112.

[34] ECF No. 88-9, Appendix DEF113.

[35] ECF No. 88 SUMF ¶ 25; ECF No. 88-9, Appendix DEF113.

[36] ECF No. 88 SUMF ¶ 26; ECF No. 88-9, Appendix DEF117.

[37] *Id.*

[38] ECF No. 88 SUMF ¶ 27; ECF No. 88-9, Appendix DEF112–117.

[39] ECF No. 88-8, Appendix DEF108.

[40] *Id.*, Appendix DEF110.

[41] *Id.*, Appendix DEF107.

[42] *Id.*

[43] ECF No. 88-2, Appendix DEF063.

[44] *Id.*, Appendix DEF064; ECF No. 88-8, Appendix DEF107–111.

[45] ECF No. 88-10, Appendix DEF118.

[46] *Id.*

[47] ECF No. 88 SUMF ¶ 3; ECF No. 88-2, Appendix DEF063.

[48] ECF No. 2.

[49] ECF Nos. 37, 38.

[50] ECF No. 43.

[51] ECF Nos. 53, 54, 56.

[52] ECF Nos. 59, 60.

[53] ECF No. 89.

---

[54] ECF No. 94.

[55] 42 U.S.C. § 1997e.

[56] *Wallace v. Doe*, 512 F. App'x 141, 143 (3d Cir. 2013).

[57] *Spruill v. Gillis*, 372 F.3d 218, 228–30.

[58] *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006).

[59] *Id.* at 85.

[60] *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

[61] *Woodford*, 548 U.S. at 83–84.

[62] *Wallace v. Miller*, 544 F. App'x 40, 42 (3d Cir. 2013).

[63] *Everett v. Robinson*, No. 22-2890, 2023 WL 6458850, at *1 (3d Cir. Oct. 4, 2023).

[64] *Id.* (citing DC-ADM 804).

[65] ECF No. 88-2, Appendix 053; ECF No. 88-7, Appendix DEF104.

[66] ECF No. 88-2, Appendix DEF054.

[67] *Id.*

[68] *Ross v. Blake*, 578 U.S. 632, 643 (2016).

[69] *Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020) (citing *Ross*, 578 U.S. at 643–44).

[70] *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018).

[71] *Davis v. Oberlander*, No. 22-00219, 2024 WL 811696, at *1 (W.D. Pa. Feb. 27, 2024).

[72] *Id.* at *4.

[73] *Id.* (citation omitted).

[74] *Id.*

[75] *Id.*

---

[76] *Williamson v. Roberts*, No. 12-785, 2013 WL 967693, at *4 (W.D. Pa. Mar. 12, 2013) (citing *Oliver v. Moore*, 145 F. App'x 731 (3d Cir. 2005)).

[77] *Talley v. Clark*, No. 19-3797, 2024 WL 3611794 (3d Cir. Aug. 1, 2024).

[78] ECF No. 88-10, Appendix DEF118.

[79] ECF No. 88-2, Appendix 053; ECF No. 88-7, Appendix DEF104.

[80] *See Medina v. Allentown Police Dept*, No. 23-1057 (E.D. Pa.); *Medina v. Aprile*, No. 23-1057, (E.D. Pa.); *Medina v. Hallman*, No. 20-2426 (E.D. Pa.).

[81] Nurse Savage argues Mr. Medina's claim against her is procedurally defaulted because he does not identify her by name in his grievance. We note it is unlikely this claim will be considered procedurally defaulted because it is not practicable for someone who is unconscious to be able to identify the persons involved in the alleged constitutional violation. *See Martin v. Sec'y of Corr.*, No. 16-2060, 2018 WL 1158250, at *4 (M.D. Pa. Mar. 5, 2018) (claim is not procedurally defaulted where inmate did not identify defendants involved in the alleged assault because he was unconscious); *Jones v. Bock*, 549 U.S. 199, 217, 219 (2007) ("[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances.").

[82] ECF No. 88-8, Appendix DEF110.

[83] *Id.*, Appendix DEF107.

[84] ECF No. 88-8, Appendix DEF107.

[85] ECF No. 88-2, Appendix DEF064; ECF No. 88-8, Appendix DEF107–111.

[86] *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

[87] 28 U.S.C. § 1367(c).

[88] ECF Nos. 59, 62.